LEVI CARR*

*v.*

THE PEOPLE *ex rel.* John Goedtner, County Collector.

*Opinion filed December 22, 1906.*

1. DRAINAGE—*legality of drainage organizations cannot be questioned on application for sale.* An objection going to the legality of the organization of a drainage district cannot be urged in defense of an application for judgment of sale for the drainage assessment and may be stricken from the files.

2. SAME—*a right of appeal from commissioners' classification is limited.* The right to appeal to the county court from the decision of drainage commissioners in classifying lands is limited to persons appearing and urging objections, and the jurisdiction of the county court to examine the classification is limited to the lands of the parties appealing and does not extend to all the lands of the district.

3. SAME—*when proceedings on appeal from drainage commissioners' classification are a nullity.* Proceedings had in the county court upon appeal from the decision of drainage commissioners in classifying lands are a nullity, where it appears from the record that none of the parties appealing were entitled to appeal, having withdrawn their objections after the commissioners had corrected the classification.

4. SAME—*when classification adopted by county court is a nullity.* A modified classification of lands in a drainage district adopted by the county court upon appeal by parties shown by the record to have no right to appeal is a nullity, and such classification cannot be made the basis for spreading the assessment.

5. SAME—*what objection may be raised upon an application for judgment of sale.* Land owners in a drainage district who did not appeal to the county court from the decision of the drainage commissioners in classifying the lands may make objection, upon application for judgment of sale for the drainage assessment, that the modified classification roll adopted by the county court as the basis of the assessment was void because of want of jurisdiction of the court to entertain the appeal, since such objection goes to the validity of the tax and not to the legality of the district.

*With this case are decided the following cases: 4972, *Worsley* v. *People;* 4973, *Kerns* v. *People;* 4974, *Simpson* v. *People;* 4975, *Kidd* v. *People;* 4976, *Burt* v. *People;* 4977, *Austin* v. *People;* 4978, *Webster* v. *People;* 4979, *Hitchins* v. *People;* and 4980, *Hitchins* v. *People.*

6. SAME—*what objections are not prevented by section 191 of Revenue act.* Section 191 of the Revenue act, relating to amendments and irregularities in the matter of taxes, does not prevent the defenses being made, on application for judgment of sale, that the tax itself is illegal or assessed upon exempt property or that the property has been fraudulently assessed too high.

APPEAL from the County Court of LaSalle county; the Hon. W. H. HINEBAUGH, Judge, presiding.

L. W. BREWER, and L. H. STRAWN, for appellant.

JAMES J. CONWAY, B. F. LINCOLN, and HUTTMANN, BUTTERS & CARR, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Drainage district No. 1 in the town of Ophir, LaSalle county, was organized in 1904 and 1905 under the Farm Drainage act. Commissioners were elected in March, 1905, and proceeded to employ an engineer and cause a survey and plans of the proposed work and estimates of its cost to be made. Thereafter the commissioners made a special assessment of benefits against the lands in the district, classifying them on a graduated scale for that purpose, and gave notice of the time and place they would hold a meeting to hear objections to said classification. This meeting was held July 10, 1905. Certain changes were made at this meeting and a modified classification roll made and adopted. On July 19, James Murray, O. D. F. Conkey, H. D. Conkey, Honore Carr Curtis, Belle Carr McCarthy, Charles Marsh and James O'Brien appealed from the order of the commissioners adopting and confirming said modified classification, by filing their appeal bonds in the county court. By agreement of the parties and their attorneys it was ordered that all these cases be consolidated and tried as one case by a jury of six August 1, which was during the term then in session; that the jury should go upon the lands of the district, after having heard the evidence, "and shall classify all the lands

224—11

in accordance with justice and right," and that said classification should be final and conclusive. In pursuance of that agreement and order the trial was begun August 1. At the conclusion of the evidence, August 2, by agreement, the court ordered the jury to view the premises in charge of the sheriff. No further steps were taken in the case till August 5, when the record shows the jury returned the following verdict: "We, the jury, find the foregoing classification to be in accordance with justice and right." The record then proceeds: "It is therefore considered and ordered by the court that said verdict of said jury as returned herein be and the same is hereby approved and confirmed, and that said drainage commissioners of drainage district No. 1 of the town of Ophir pay the costs of this proceeding, and that execution issue therefor." By the classification reported by the jury the lands of the appellant were classified on the graduated scale at a materially higher rate than they were by the modified classification roll adopted by the drainage commissioners.

The commissioners determined that the total amount of money necessary to be raised to complete the work was $29,000, and this was divided into three installments,—two of $10,000 each and one of $9000,—to be paid at different times. When the first installment became due appellant refused to pay the proportion of it charged to his land and it was returned as delinquent. Upon application by the county collector to the county court for a judgment and order of sale against appellant's land for delinquent drainage tax, appellant appeared and filed objections to the entering of such judgment and order of sale. Some of these objections questioned the validity of the classification roll adopted by the county court. It was charged that the proceeding by which said classification was adopted was without warrant of law, illegal and void. Other objections sought to question the legality of the organization of the district. The county court refused to consider objections of the latter

class and struck them from the files.   In this we think there was no error.   Appellant could not attack the legality of the corporation in this proceeding.   (*People* v. *Dyer,* 205 Ill. 575 ; *People* v. *Jones,* 137 id. 35.)   All the objections not stricken from the files were overruled by the court and judgment entered as prayed by appellee.  From that judgment this appeal is prosecuted.

The substance of the objections upon which the hearing was had in the county court, and which, alone, we will consider, is:  (1) That the parties who took the appeal from the modified classification roll adopted by the commissioners were not entitled by law to take such appeal, and the appeal, therefore, and all the proceedings by virtue of it, are null and void;  (2) that land owners not appealing from the classification are not parties to the suit, the only parties being the parties prosecuting the appeal and the drainage commissioners, and the classification of the lands of those not appealing and to which no objections were made at the commissioners' meeting cannot be affected by any change in the classification of the lands objected to by those prosecuting the appeal.   This requires a determination of whether the county court was without jurisdiction to hear and determine the appeals, and whether, if said court had no jurisdiction to entertain the appeals and proceed thereunder, that question can be raised upon objection when the collector makes application for judgment against the land for the tax.

Appellee insists that these questions can only be raised by some direct proceeding.   We are of opinion the record before us of the proceedings from which the appeals were prosecuted shows the county court was without jurisdiction to entertain the appeal.

Section 24 of the Farm Drainage act reads as follows: "At the time of meeting for review the commissioners shall hear whatever objections may be urged by any person interested, and if satisfied that any injustice has been done in the classification of the several tracts of land or any of them,

they shall correct the same in accordance with what is right, but if not so satisfied, they shall leave the classification as first made, and enter an order to that effect. *Any person appearing and urging objections, who is not satisfied* with the decision of the commissioners, may appeal from their decision to the county court of the county in which the lands affected are situated, within ten days after the decision of the commissioners was rendered, by filing with the county clerk a bond with security conditioned to pay such tax as may finally be levied upon the land in question, and the costs occasioned by the appeal, in case the commissioners shall be sustained by the court of appeal." (Hurd's Stat. 1905, p. 806.)

At the time of the meeting to hear objections to the classification roll made by the commissioners, it appears from the record of the meeting that none of the parties who prosecuted an appeal, except H. D. Conkey, were present. He objected to the rating of one tract of land of O. D. F. Conkey on the ground that it was too high, but made no objection to the rating of his own land. Daniel McCarthy, on behalf of Belle Carr McCarthy and Honore Carr Curtis, objected to the rating of W. H. Kidd's land on the ground that it was too low. The record contains no mention of any other objections by or on behalf of any of those who prosecuted the appeal to the county court. Appellant objected to the classification of his land on the ground it was rated too high. John E. Hill objected to the rating of the lands of George Webster, Sarah Worsley, Catharine Simpson, Joseph Hitchins and Thomas Hitchins, all of whom are objectors to the application for judgment, on the ground that their lands were rated too high. William H. Kidd, another objector to the application for judgment, objected to the rating on his land on the ground it was rated too high. After hearing and considering all objections made, the commissioners modified the classification roll and reduced the rating of the lands of all the parties who filed objections to the application of the county collector for judgment, and announced the

same, as modified, to the meeting. The record of said meeting reads, that "when the commissioners announced the changes made in the classification roll, as aforesaid, all persons who had previously objected on the grounds that their lands were rated too high withdrew their objections, with the exception of Sarah Worsley and Bernard Brady. William H. Kidd withdrew all objections made by him as to other lands than his own being classified too low, whereupon the modified classification roll was ordered confirmed, approved, adopted and recorded in the drainage record, by the said drainage record, [commissioners] which modified classification roll is in the words and figures following, to-wit:" (then follows said modified classification roll.)

It will be seen by the section of the act above quoted, that at the meeting to hear objections to the classification roll the commissioners shall hear objections that may be "urged by any person interested," and if satisfied an injustice has been done, they shall correct the classification in accordance with what is right. "*Any person appearing and urging objections, who is not satisfied with the decision of the commissioners,* may appeal from their decision to the county court," etc. It will be seen the right to appeal is limited to persons "appearing and urging objections." It will be observed from the record of the meeting of the commissioners to hear objections, above referred to, that the only one of the parties taking an appeal who appeared and urged objections was H. D. Conkey, and the only objection urged by him was, that one tract of land of O. D. F. Conkey was rated too high. The record shows that after the classification had been corrected and read by the commissioners as modified, "all persons who had previously objected on the grounds that their lands were rated too high withdrew their objections, with the exception of Sarah Worsley and Bernard Brady." These two parties were not among those who appealed. H. D. Conkey, one of the appealing parties, urged no objections on his own behalf, but objected only to

the rating of one tract of O. D. F. Conkey's land. If he had a right to represent and urge objections on behalf of O. D. F. Conkey, he had the right also to withdraw the objections, which the record shows was done, and the matter stood as if no objections had ever been urged by him. As we understand the statute, none of the parties who prosecuted an appeal from the decision of the commissioners adopting the modified classification were entitled to prosecute said appeal, and said appeals, and all proceedings thereunder, were a nullity. Limiting the right to appeal to persons "appearing and urging objections" excludes that right from all others.

We are also of opinion that where a person appears at the meeting of the commissioners and objects to the rating of his land on the ground it is too high, or to the rating of the land of another on the ground that it is too low, and appeals from the decision of the commissioners overruling such objections, on the hearing of the appeal in the county court said court is without jurisdiction to investigate and examine the classification of all the lands in the district, but its jurisdiction is limited to a determination of the correctness of the classification of the lands to which the appellant urged objections before the commissioners. Owners of lands in the district who have not appealed are not parties to the suit in the county court and have no right to be heard there,—no right even to object to the jurisdiction of the county court to entertain the appeal. No means is provided for notifying them of such appeal or when it will be heard, or for giving them any opportunity to protect themselves against a change in the rating of their land by the county court. Neither is any opportunity afforded them to object to or have reviewed the action of the county court, if the classification of their lands as made by the commissioners shall be changed by the county court.

Section 25 of the act relates to the procedure in the county court on appeals from the classification adopted by the commissioners. Said section requires the appeal to be

tried by a special jury summoned for that purpose, and makes it the duty of the court to lay before the jury the classification adopted by the drainage commissioners, and the jury is required to examine the classification and hear the allegations and testimony in support of and in opposition to it; and, if requested by either party, to visit the district and view the lands. "If they [the jury] find *the tracts of land in question* are marked too high or too low in the classification, they shall correct the errors; but if no injustice has been done, they shall confirm the classification as made by the commissioners." It would seem that the jury, in their examination, are restricted to "the tracts of land in question," —*i. e.,* the land the appellant claims is classified too high or too low,—and that the authority of the jury is only to "correct the errors" alleged by the appellant to have resulted from overruling his objections. This view, we think, is supported by said section 25, limiting the right of appeal from the judgment of the county court to the parties to such appeal. That provision of said section is: "That if either party to such appeal shall be dissatisfied with the decision rendered by the special jury as above provided, the county judge may hear reasons for or against a further appeal to the circuit court of said county on the classification of the *lands in question,* and may, at his discretion, grant or refuse such appeal. If further appeal be not prayed for or be refused by the county judge, then the decision rendered by the special jury in the county court shall be conclusive and final." It would be a manifest injustice to the other land owners in the district if one person could, by objecting to the rating of one tract of land and by appealing from the classification of it by the commissioners, cause a new classification of all the lands in the district without the other owners having any opportunity to be heard, either at the time of its adoption or to have it reviewed in some proceeding afterwards. Both the language and spirit of the act appear to us to forbid any other construction than the one we have placed upon it. To

give it a different interpretation would be to authorize the taking of property without due process of law.

Our conclusion therefore is, that the appeal was as unauthorized and void as if it had been taken by some one not owning any land in the district, and that all proceedings thereunder, including the adoption of the classification roll, were a nullity because the court had no jurisdiction to entertain the appeals, and that this appears upon the face of the record of the proceedings in the county court. The modified classification adopted by the commissioners is the proper and legal classification of the lands in said district and the one from which the assessment roll should have been spread. The classification adopted by the county court, in our view, had no more validity than another classification made by the commissioners after their meeting to hear objections and without notice to any of the land owners would have had. In other words, the assessment roll spread upon the classification made in the county court proceedings was as illegal and void as an assessment would have been if spread upon a classification different from the one adopted by the commissioners at their meeting, and made by them after said meeting without the knowledge of the land owners in the district.

The objections we have considered relate only to the validity of the tax, and the validity of the tax depends upon the validity of the classification roll from which it was spread, and not upon the legal existence of the corporation seeking to collect the tax. Under these circumstances we think the question may properly be raised on objections to the application for judgment and sale, as was done here. It is the first opportunity the owners of the land who took no appeal have had to object to the illegality of the county court classification roll. It may be that the question could be raised by some direct proceeding, but if it could we think resort to that remedy is not compulsory. The question being merely as to the validity of a tax, and not a denial of the existence of the body seeking to impose the tax, the law au-

thorized the determination of the question upon objections to said tax.

Section 191 of the Revenue Code provides that "no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof." (Hurd's Stat. 1905, p. 1674.)  Said section further provides that irregularities or informalities in the proceedings of the officers charged with the duty of levying and collecting taxes may be corrected and supplied and made to conform to the requirements of the law.  But where the tax itself is illegal no such amendment or correction can be made.  Under this provision of the statute it has been repeatedly held that on objections to the application for judgment against land for delinquent taxes it may be shown that the tax is not authorized by law, or is assessed on property not subject to taxation, or that the property has been fraudulently assessed at too high a rate. (*Clement* v. *People,* 177 Ill. 144; *Keokuk Bridge Co.* v. *People,* 161 id. 132.)  The objections here under consideration do not question the jurisdiction of the drainage commissioners over all the land in the drainage district nor their authority to assess said lands for the purpose of making the proposed improvement. In such case we think *People* v. *Dyer, supra, People* v. *Jones, supra,* and similar cases have no application.  In the latter case one of the objections to the application for judgment for a drainage tax questioned the legality of bonds issued by the commissioners for the payment of which the tax was sought to be collected. The court held the objection was not well taken because the bonds were legally issued, but it was nowhere intimated that the question could not be raised on the objection to application for judgment.

Counsel for appellee say it does not appear from the record what classification the assessment was made from, and that it will therefore be presumed to have been regular.  A

stipulation was entered into by the parties on the hearing of the objections, by which it was stipulated "that this assessment upon the lands of the district was made upon the basis of the last roll,—that is to say, the roll as modified and made out and signed by the jury in the county court which has been introduced in evidence."

Our conclusion is that the assessment roll should have been spread upon the modified classification made by the commissioners, and that the county court erred in not sustaining appellant's objections as to the validity of the assessment made upon the county court classification.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*