(No. 23071.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE
COMMONWEALTH EDISON COMPANY, Appellant.

*Opinion filed October 15, 1937—Rehearing denied Dec. 8, 1937.*

Shaw and Wilson, JJ., dissenting..

Taylor, Miller, Busch & Boyden, Cooke, Sullivan & Ricks, Wilson & McIlvaine, and Robert N. Holt, for appellant.

Thomas J. Courtney, State's Attorney, (Marshall V. Kearney, Philip H. Treacy, Jacob Shamberg, Manuel E. Cowen, and Brendan Q. O'Brien, of counsel,) for appellee.

Mr. Justice Herrick prepared the opinion of the court:

The People recovered a judgment for $1,773,708.59 against the defendant (appellant here) in the county court of Cook county in an action in debt to recover an alleged unpaid balance of its personal property tax for the year 1931.

Many errors are assigned and argued. Three major ones may be summarized as follows: (1) That the taxing authorities failed to classify and list defendant's personal property by items, class and kind, but improperly allocated all of its property to column 40 of the assessor's report; (2) the county court erroneously included in such judgment a sum found due by that court as unpaid capital stock tax, and (3) the Cook county taxing authorities made a fraudulent, excessive and discriminatory assessment of defendant's personal property and therefore denied to the defendant the equal protection of the law contrary to the fourteenth amendment of the Federal constitution.

An equalized assessment of $59,222,675 was levied against the defendant's tangible personal property for 1931.

The defendant filed a complaint with the board of appeals. The complaint was denied and the assessment confirmed. Taxes were extended thereon in the sum of $4,319,866.33 of which the defendant, prior to the commencement of the present suit, paid $3,029,028.19, which was sufficient to pay the tax on an equalized assessment of defendant's tangible personal property in the sum of $43,395,391.

About June 5, 1931, the defendant filed with the assessor a detailed, verified statement showing the valuation for taxation purposes of all of its tangible personal property located in twenty-six towns of the county. The total valuation thereof for taxation purposes, as listed, was $35,125,000. The schedule disclosed property in seven separate classes corresponding with seven specific items as provided in the form for the listing of personal property in the schedule prescribed by the State Tax Commission; $1,054,113 belonged under the last column. After the schedule was filed, and before the assessment was made, the defendant submitted to the assessor a lengthy statement setting forth, in great detail, its tangible personal property according to specific kinds and classes and, also, a complete separation of its property accounts, numbered and kept according to the several kinds and classes in accordance with the requirements of the Illinois Commerce Commission. The record shows these valuations were obtained from an appraisal made by Byllesby & Co. in 1908, with the subsequent yearly acquisitions. This writing furnished the information from which the taxing authorities could have itemized, listed and assessed the property by and into the different subdivisions directed by the form authorized by the State Tax Commission. The fair cash value after depreciation, in accordance with the testimony of defendant's witnesses, was $108,882,842.29 which, by the application of the debasing factor of 37 adopted in Cook county, would have produced an equalized value of $40,264,451.91. Further, at the assessor's request, he was furnished by the defendant with a

copy of its report for the fiscal year ending December 31, 1930. The assessor did not cause any examination to be made of any of the chattels for the purpose of ascertaining their physical condition, although the company offered to let him select any property at random for inspection, as a possible factor in determining whether the company's valuation, as returned, was reasonable.

The defendant contends, and the People practically concede, that the assessor determined the assessed value of defendant's tangible personal property on the basis of book valuation and the accounts therein kept as heretofore stated. The calculation adopted by him in reaching the assessment was as follows:

```
Capital account March 31, 1931.................... $304,267,816
Less real estate and intangibles.....................  69,852,768
Remainder.........................................  234,415,048
Less depreciation thirty per cent....................  70,324,514
Remainder.........................................  164,090,534
Less property out of service........................  4,029,252
Remainder.........................................  160,061,282
This latter amount debased at 37 gives equalized
   value of......................................  $ 59,222,675
```

(The property-out-of-service item was not allowed by the assessor but he, as a member of the board of appeals, recommended it, and it was there allowed as a deductible item.)

No depreciation as to item or type was granted, but the assessor made an overall depreciation allowance of thirty per cent upon the valuation as carried on defendant's books. The equalized assessment of $59,222,675 was apportioned between the different taxing units where the defendant had tangible personal property, in the proportion its percentage, as shown by defendant's tax schedule, bore to the total amount of all of defendant's property as shown in such tax return. The specific amount allocated to each taxing district was entered in the assessor's book under column 40 as above stated. No other entries of the valuation, kind

or character of defendant's tangible property were made in the assessor's book. The tax in controversy against defendant's personal property was extended upon the sole classification of column 40 designated as "All other personal property required to be listed."

Section 25 of chapter 120 (Smith-Hurd Stat. 1929, p. 2371; Cahill's Stat. 1929, p. 2162,) which was in force April 1, 1931, provided for the listing of personal property into thirty-six classes. The "thirty-sixth" was as follows: "The value of all other property required to be listed." This section was amended by an act approved July 3, 1931, and personal property was by it required to be listed on the form of schedule ordered and furnished by the State Tax Commission. (Laws of 1931, p. 775.) The State Tax Commission prescribed a form which classified personal property into forty subdivisions, the one numbered 40 being as above set forth. The assessor adopted for his record, in making the assessment for 1931, the form showing forty subdivisions rather than the thirty-six. Whichever form was used, and it is not necessary to the determination of the case which was the proper one, the defendant had returned to the assessor, for taxation purposes, personal property falling into seven of the classifications required both by the statute in force April 1, 1931, and the form ordained by the State Tax Commission under the amendment of 1931, granting it that power. The amount of defendant's personal property falling within item 40 was $1,054,113, while the aggregrate of the other six separate classifications was $95,185,776, before equalization.

The statute in effect on April 1, 1931, provided that the assessor or his deputy should annually, between April 1 and June 1, list the taxable personal property in his county, town or district and assess the value thereof as of April 1 (Smith-Hurd Stat. 1929, chap. 120, par. 295, p. 2416; Cahill's Stat. 1929, p. 2204;) while section 24 (Smith-Hurd Stat. 1929, p. 2371; Cahill's Stat. 1929, p. 2161;)

required him to determine and fix the fair cash value of all articles of personal property. It is obvious that no effort was made by the assessor to comply with the statutory requirements in the listing and taxing of personal property. If we adopt the form applicable on this branch of the case for the itemization of the tangible personal property commanded by the State Tax Commission, and which is the one the assessor chose, the first thirty-nine divisions particularly specify the kind and character of the personal property to be listed under the several classifications. The assessor's books are prepared in accordance with the same plan for the entry of the forty different types of tangible personal property.

This court has repeatedly held that the tangible personal property of tax-payers must be listed by the taxing authorities by setting down the separate kinds of property in the appropriate column and entering the assessed value immediately opposite. The assessment of tangible personal property of a tax-payer in a lump sum is not permitted by law. *Carney* v. *People,* 210 Ill. 434, 442; *People* v. *Grant,* 271 id. 523; *People* v. *Nat. Plate Glass Co.* 332 id. 599, 602; *Roach & Co.* v. *Harding,* 348 id. 454, 476; *People* v. *Calumet Steel Co.* 351 id. 451, 455.

It was not an idle purpose which the General Assembly had in mind when, by statute, it provided a method for the listing and assessing of personal property. It thereby created a plan, which, if followed by the assessor, would serve at least a threefold purpose: (1) It would inform those of the public generally as to the nature and amount of personal property which the tax-payer had submitted for assessment and tend to influence, on his part, a full rendition of his property; (2) a tax-payer would know the kind and amount of property on which he was assessed and the aggregate assessment as to each class, and could plead such assessment in bar if an effort was later made to re-assess the same property as omitted property, and (3) bodies cre-

ated for the purpose of discovering property not returned for taxation, and causing it to be assessed, would have a schedule of the property disclosed by the tax-payer. The investigating body would thereby be able more readily to determine whether the owner had made a complete return, and omitted property, liable to taxation, could be ascertained more easily.

Human experience has taught us that thus far in recorded history no method, by law, providing for the taxation of personal property is perfect in its practical application. However, the General Assembly did enact what it considered was as efficient a system as could then be devised. The assessor here has failed to follow the mandate of the General Assembly prescribing the method for the listing of personal property for taxation purposes. The legislative word was not directory but mandatory. The assessment as made after debasement in column 40 was approximately sixty times greater than the value, before debasement or equalization, of all the defendant's property that could properly have been listed under column 40. The defendant has already paid a personal property tax which is almost three times the value of all the personal property legally included in column 40. The assessment of defendant's property in column 40 was grossly excessive and void. *People* v. *Pullman Car & Manf. Corp.* 355 Ill. 438, 441; *People* v. *Crowe Name Plate Co.* 357 id. 384.

The People urge that because the defendant paid its capital stock tax in which the valuation of its deductible tangibles was fixed at $88,000,000, therefore it is estopped to controvert its assessment under column 40. The valuation made by the State Tax Commission was not induced by the return made to it by the defendant. Such value was some $10,000,000 in excess of the amount submitted by the defendant to the commission. In its statement to the commission the defendant separated its real estate from its tangible personal property values. The rule of the State

Tax Commission, requiring the tax-payer's property to be listed so far as applicable under the forty different subdivisions, was directed to the local assessing officer. It did not apply to schedules made directly to the commission. The record is barren of any evidence that defendant ever consented, before the assessor or board of appeals, to the scheduling of all its tangible personal property under column 40. Plaintiff cites *People* v. *Illinois Central Railroad Co.* 273 Ill. 220, 258, as sustaining its position. In that case the tax-payer corporation made a return to the Auditor of Public Accounts on the form of schedule prepared by the auditor of the aggregate value of the railroad track of the charter lines to be assessed. On the hearing in the ensuing litigation the company sought to prove the railroad track to be of less value than that stated by its report. The court held the company was not in a position to make such claim by reason of its return. The opinion in that case lays down the rule that "In the absence of any evidence of fraud, accident or mistake, a property owner is bound by a schedule of his taxable personalty given by him to the assessor." We have no quarrel with that legal principle. It is sound legal doctrine. The decision in that case does not control the decision here. The factual situation there does not obtain in the case at bar. The tax here sought to be collected is not one extended on the basis of the return of the several classes of its property as provided by the statute or the rules of the State Tax Commission, which, for that purpose, have the force of law, but the tax sought to be enforced on that phase of the case is on the basis of a lump sum assessment of the defendant's tangible personalty. The defendant in its statement to the State Tax Commission valued its personal property, as equalized, at $35,125,000. It paid a tax that far exceeded a tax on that sum before the commencement of this suit.

The People also cite *People* v. *Atkinson,* 103 Ill. 45, 50, *Dennison* v. *County Comrs.* 153 id. 516, 519, and *People*

v. *Sanitary District,* 302 id. 350, 354. These cases are equally non-controlling of the issues here for the reasons, in principle, above stated in *People* v. *Illinois Central Railroad Co. supra.*

We next take up the issue made by the purported increase of the defendant's capital stock assessment. On June 18, 1931, the defendant made its return to the State Tax Commission, pursuant to section 32 of the Revenue act (Smith-Hurd Stat. 1929, p. 2373; Cahill's Stat. 1929, p. 2163;) on the form prescribed for the assessment of its property for the capital stock tax. Under the caption "The assessed valuation as fixed by the local assessor" the defendant reported: "Lands and buildings, $34,290,470; personal property, $35,125,000; total, $69,415,470." The State Tax Commission thereafter fixed the total value of the defendant's capital stock at $106,570,000 and deducted therefrom the sum of $88,000,000 purporting to be the "equalized value of tangible property assessed by local assessor under requirements of the Revenue law," and determined the difference at $18,570,000, as the "net assessment of capital stock, including franchise, being excess of equalized value of capital stock and debt over tangible property assessed by local assessor."

On October 10, 1931, the State Tax Commission published its assessment of defendant's capital stock and that of other corporations in Cook county, as required by section 9 of the Revenue act (State Bar Stat. 1935, chap. 120, par. 114,) in the State "official newspaper." That publication did not disclose the valuations from which the defendant's assessment was made but merely stated its net assessment to be $18,570,000. The annual report of the State Tax Commission for 1931 showing the deductions made by it for the assessed value of tangible property was released to the State superintendent of printing on May 9, 1932. The date on which publication of the report was actually made is not shown by the record. The amount of

the valuation of the net capital stock was duly certified to the county clerk, and the tax extended thereon in the sum of $1,305,471. This tax was paid by defendant before the institution of the present action. On July 9, 1934, more than a year after the original declaration was filed, and after the closing of the evidence under the original declaration and the amendment thereto, the People, over defendant's objection, obtained further leave to amend, claiming the defendant had not paid all of its capital stock tax. The plaintiff proved that the State Tax Commission, in making its computations for assessing the capital stock tax and fixing the equalized value for taxation purposes, deducted the sum of $88,000,000 as the assessed value of defendant's tangible property and that the assessed value of its real estate for 1931 was $18,056,185. The defendant's objection to this evidence was overruled. The latter amount was added to the assessed valuation of defendant's tangible personal property of $59,222,675, made by the assessor as before shown, making the total of $77,278,860 as the aggregate of the defendant's real and tangible personal property. The People then urged that the defendant had been under-assessed for its capital stock tax in the sum of $10,721,140, which was the amount obtained by subtracting the sum of $77,278,860 from the $88,000,000 deducted by the State Tax Commission as the value of the defendant's tangible property. The record further shows that on August 18, 1934, the State Tax Commission wrote a letter to the State's attorney acknowledging receipt of certified copies of certain proceedings before the trial court and inclosing, "the amended assessment of the capital stock for the year 1931," and stating: "It is our understanding from what you have placed before us that we have been directed to do this by the county court of Cook county." The enclosure was a certificate signed by members of the State Tax Commission under date of August 20, 1934, addressed to the county clerk of Cook county, reciting that the county

court, in the present case, had "authorized and directed" to be made "an amendment of the assessment of the capital stock of Commonwealth Edison Company * * * by deducting from the assessed value of capital stock and franchise as determined and equalized by the Tax Commission, viz.: $106,570,000, the correct equalized value of tangible property * * * viz.: $77,278,860 in lieu of the incorrect equalized value of tangible property as erroneously returned by the tax-payer and deducted by the commission in the sum of $88,000,000." The certificate further recited that the State Tax Commission "by virtue of said authority from and pursuant to said direction of the said county court of Cook county" had amended the assessment accordingly and that $29,291,140 represented the net assessment of the capital stock. The county clerk was directed to record that assessment in his books "in lieu of the incorrect assessment of $18,570,000 by you heretofore entered, so that taxes may be extended on said value." By leave of the court an employee of the county clerk's office, in the presence of the county judge, in open court amended the tax warrant book in accordance with the directions contained in the certificate of the State Tax Commission.

This supposed additional capital stock tax amounted to $742,975.01 and was included in the recovery had by the plaintiff. The plaintiff contends that this increase was merely an amendment to an existing record so as to cause it to speak the truth. It will be remembered that the assessment of the defendant's tangible property was not made until some time between October 8, 1932, and February 4, 1933, so that it was not possible for the State Tax Commission to have had before it the assessment of the defendant's tangible personal property. Such assessment was not then in existence. Neither did the report of the defendant to the State Tax Commission influence that body to fix the amount of defendant's real and tangible personal property at $88,000,000, for the total valuation returned by it to

the State Tax Commission of both classes of property was $69,415,470. In making the original assessment the commission apparently took the view that the discharge of its official functions should not be stayed by the tardy return of the assessment of the tangible property by the local assessing officials; that its work should proceed and, in the absence of such return by the assessor of the assessment of the corporation's tangible property for the tax year, the commission would expedite its work, so far as practicable, by the determination of the value of the property of the corporations of Cook county liable to a capital stock tax. Accordingly it did determine and equalize the value of 2183 corporations in Cook county subject to a capital stock tax, without awaiting the information from the assessment, to be made some time in the future, of the tangible property of such corporations liable for the 1931 capital stock tax.

The purported amendment here made was not one of form or a mere irregularity but was a substantial increase in the amount of a tax theretofore made against defendant and which tax had been paid by it. Neither section 191 nor 281 of the Revenue act warranted a change made in the defendant's assessment or tax. The cases cited by the plaintiff where this court has applied either of those sections do not control, for here there is no omission of an existing fact from the record by an officer charged with the keeping of the record, nor is the supposed error the defective act of some officer connected with the assessment or levying of taxes. The action taken was not an amendment of an "informality," "irregularity" or clerical "error" resulting from the "omission" or "defective act" of a taxing official in connection with the assessment or levying of taxes. Neither section 191 nor 281 permits the changing of a record to state that a certain action was taken which in fact was not taken. *Carr* v. *People,* 224 Ill. 160; *People* v. *New York Central and St. Louis Railroad Co.* 320 id. 148;

*People* v. *Wabash Railway Co.* 316 id. 403; *People* v. *Chicago and Eastern Illinois Railway Co.* 361 id. 470.

The term "capital stock," as employed in the Revenue act pertinent to the levy of a capital stock tax, is quite comprehensive. "Capital stock" embraces all the corporate property of every kind, character and description, tangible and intangible, corporeal and incorporeal. Everything of value which the corporation possesses falls into the category of "capital stock." (*National Reserve Ins. Co.* v. *Shipton,* 314 Ill. 472; *Illinois Central Railroad Co.* v. *Carr,* 302 id. 172; *Central Illinois Public Service Co.* v. *Swartz,* 284 id. 108.) "Capital stock" does not mean the shares of stock, separately or collectively, but refers to the aggregate property of the corporation. (*Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561; *National Reserve Ins. Co.* v. *Shipton, supra.*) To ascertain the value of the "capital stock" subject to taxation, all the property of every kind, character, classification and description, including the franchise granted by the State, must be considered and valued; from the aggregate sum thus obtained there must then be deducted the value of the tangible property in order to prevent double taxation. (*Illinois Central Railroad Co.* v. *Carr, supra.*) The tangible property must be taken into consideration as a part of the capital stock, and its value must be subtracted in order to arrive at the correct amount at which the assessment should be made. *Central Illinois Public Service Co.* v. *Swartz, supra.*

The record clearly demonstrates that the State Tax Commission, in making the so-called amended or corrected valuation did not act of its own motion but merely obeyed the order of the county court commanding not only that the assessment be changed and increased, but what the amount of the increase should be. The State Tax Commission was given no discretion in the matter. We are not aware of any statute of this State which attempts to confer jurisdiction on the county court to require the State

Tax Commission to re-value property or to make a so-called correction of its records, or to require it to take any affirmative action in making assessments coming within the statutory domain of the commission. The People have not directed our attention to any such enactment. Whether such a statute, if it exists, would be constitutional, is not before us. The general rule is "The power to tax is not judicial." Cooley on Taxation, (3d ed.) p. 46.

A brief recurrence to the fundamental principles of our government may not be amiss. The three departments, legislative, executive and judicial, in the aggregate, constitute what we are pleased to call the government. Each is supreme in its own realm. Neither, constitutionally, may venture to function in the sphere of the other departments. It is the province of the judiciary to construe the law and not to undertake to assume the power of the legislative branch of the State. The legislature cannot confer the power to tax on either the executive or judicial branch of the government. (Cooley on Taxation, (3d ed.) p. 47.) Section 1 of article 9 of our constitution imposes on the· General Assembly the duty of raising such revenue as may be needful by levying a tax by valuation, "such value to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise." This provision of the constitution, in no unmistakable terms, reposes the power to determine values for taxation purposes solely in the legislative branch of the government through such elective or appointive officers as it may resolve by legislative edict. Under its provisions the judiciary has no jurisdiction to value property for taxation purposes. That power is reposed in the taxing instrumentalities provided by the General Assembly. *Republic Life Ins. Co.* v. *Pollak,* 75 Ill. 292; *Carr* v. *People, supra; School Directors* v. *School Directors,* 232 Ill. 322; *Central Illinois Public Service Co.* v. *Swartz, supra.*

The State Tax Commission's duty was to fix the value of the capital stock for taxation for the year 1931. We must assume that in finding the valuation for tax assessment purposes, it followed its rules, recognized by this court as the proper basis for arriving at such value. To do so, it must necessarily have considered and determined the value of all of the defendant's property, tangible and intangible, of every type, character and description. In the ordinary course of affairs the valuation of such tangible property for assessment purposes would have been furnished by the assessor, but, by reason of the unusual conditions prevailing in the taxing instrumentalities in Cook county, such information was not available. The local assessment had no existence until about a year later. The commission, therefore, apparently from its own independent investigation, ascertained and determined the value of the defendant's tangible property for the purpose of assessment. The valuation of the tangible property, whether correct or incorrect, decided by the commission, entered into the gross amount of the valuation of the entire property of the defendant before making the deduction of the value of its tangible property. (*Central Illinois Public Service Co.* v. *Swartz, supra.*) The principle of requiring deduction of the tangibles from the gross value is to avoid duplicate taxation. The tangibles are taxed separately in the different taxing districts where located and a tax is paid thereon entirely distinct from the capital stock tax. In arriving at the net value, so as to avoid double taxation, the same amount included for tangibles in the gross value must necessarily have been deducted as the value of the tangible property. If the value of the tangibles as used by the State Tax Commission was erroneous by reason of being excessive, the same amount entered into the gross value of the corporate property, and such error was then off-set by the deduction of a like amount in the subtraction of the value of the tangible property from the gross,

in calculating the amount subject to the capital stock tax. Bearing these facts in mind, what happenend when the county court assumed to review the action of the State Tax Commission and discovered what that court determined was an incorrect amount deducted as the value of the corporate tangible property from the gross value of all its property? The county court purported to substitute its judgment for that of the State Tax Commission in deciding the net amount upon which the capital stock tax should be extended against the defendant's property. If the county court had that power, which in our opinion it did not have, the fallacy of its order was that it overlooked the salient fact that the same value of deductibles used by the State Tax Commission was *pro tanto* a component factor which went to make up the total value of defendant's property before deduction. The obligation of the State Tax Commission to avoid double taxation was thus thwarted to the extent of the difference in the amount used by it as the value of tangibles, in the absence of the assessment of the local assessor, and the value as later returned by the assessor. It was an administrative function of the State Tax Commission to determine both the gross and net value of the capital stock. It would be a startling doctrine that would permit a different valuation of tangible property to be used in deciding the gross value of the capital stock, from the subtrahend adopted as the value of the tangibles deductible in the calculation of the net value of the capital stock for taxation purposes. The commission was not given the opportunity to exclude from the gross valuation the same amount which it determined as tangibles in reaching the gross valuation. By the *ex parte* order entered by the county court, the defendant was afforded no opportunity to be heard before the State Tax Commission on the proposed increase of the amount of its net capital stock for taxation. It was deprived of its right to apply for review of the order purporting to increase the assessable value of

its capital stock provided by section 9, or appeal therefrom to the circuit court as provided by section 10 of the State Tax Commission act. Smith-Hurd Stat. 1931, chap. 120, pars. 346, 7, p. 2445; Cahill's Stat. 1931, p. 2330.

Even if the county court had it within its power to order the State Tax Commission to revise its assessment, such order deprived the defendant of due process of law in violation of the fourteenth amendment of the Federal constitution. The levy of the increased amount of capital stock tax of the defendant was void. These conclusions reached by us make it unnecessary to decide the other issues raised.

The judgment of the county court of Cook county is reversed.

*Judgment reversed.*

SHAW and WILSON, JJ., dissenting.