(No. 26006.—

THE PEOPLE *ex rel.* John Toman, County Collector, Appellant, *vs.* THE CHICAGO HEIGHTS TERMINAL TRANSFER RAILROAD COMPANY, Appellee.

*Opinion filed February 18, 1941.*

THOMAS J. COURTNEY, State's Attorney, MARSHALL V. KEARNEY, JACOB SHAMBERG, and BRENDAN Q. O'BRIEN, (EDWIN B. POORMAN, of counsel,) for appellant.

ROBERT N. HOLT, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Bloom Township High School District No. 206, in Cook and Will counties, levied $172,173 for educational

purposes for the year 1938, and a rate of $1.26 on each $100 of the assessed valuation of the taxable property in the district located in Cook county was extended by the county clerk of Cook county. The defendant, the Chicago Heights Terminal Transfer Railroad Company, the owner of property in Cook county, paid its taxes in full, under protest. Thereafter, when the relator, the county collecter, applied for a judgment against and an order for the sale of real estate for the non-payment of taxes for the year 1938, the defendant interposed objections to the levy on the ground that the tax rate for educational purposes was extended in an amount exceeding one per cent without a proposition for the assent thereto having been presented to and approved by the voters of the district and, that, in consequence, the rate was excessive and void to the extent of twenty-six cents. The county court of Cook county sustained the objections and ordered a refund of the excess amount paid by the defendant. From that judgment, the collector prosecutes this appeal.

Bloom Township High School District No. 206, which has now and always has had a population of between 1000 and 100,000, was organized under "An act to establish and maintain a system of free schools." (Ill. Rev. Stat. 1939, chap. 122, p. 2855.) At the time the objections were filed, the tax rate prescribed by section 189 of the School law for educational purposes for such school district was one per cent without a referendum and one and one-half per cent after the proposition for the assent thereto had been submitted to and approved by the voters. May 22, 1937, the electors of school district No. 206 rejected, by an adverse vote of 1520 to 212, the proposition of increasing the tax rate for educational purposes from one to one and one-half per cent. Admitting that the election in 1937 did not confer authority to levy a rate in excess of one per cent, the collector, to sustain the levy, contends that an election on April 9, 1921, empowered the board of education of the school district to levy up to the maximum referendum rate

of two per cent for educational purposes then permitted by section 189 of the School law; that this authority continued in force through the numerous amendments to section 189 since 1921, and, accordingly, that the board was authorized, in 1938, to levy up to the then maximum referendum rate of one and one-half per cent for educational purposes, irrespective of the defeat of the proposition to increase the rate from one to one and one-half per cent at the election in 1937 and despite the fact that the board, during the years 1921 to 1937, inclusive, did not levy an amount in excess of the varying basic rate for educational purposes. On the other hand, the defendant assails the proceedings of the board of education incident to the 1921 election, insists that they did not authorize an election to vote upon an increase of rates, and that the amendments to the 1921 proceedings made during the pendency of this proceeding are a nullity. The determination of the issue thus made requires a review of the facts and circumstances attending the 1921 election.

In March and April, 1921, section 189 of the School law provided that if the directors or the board of education desired to levy more than one and one-third per cent, but not more than two per cent for educational purposes, "such directors or board may, by resolution stating the percentages so desired, cause a proposition for an assent thereto to be submitted to the voters of such district at any general or school election or at a special election called for such purpose, and if at such election a majority of the votes cast on said proposition shall be in favor thereof, the directors or the board of education of such district may thereafter until such authority is revoked in like manner, levy or cause to be levied annually for educational purposes a tax in excess of one and one-third per cent but not exceeding the percentage mentioned in said proposition." (Laws of 1919, p. 856.) The record of the proceedings of the board of education shows that at its meeting on March 10, 1921,

it voted to submit to the electors of the district, "the privilege of increasing our levy to the additional two-thirds of one per cent, as allowed by the School law of Illinois." So far as pertinent to this inquiry, the action of the board, as reflected in the minutes of the meeting, is as follows: "Mr. Macke moved and Mr. Angus seconded that we, at the regular yearly election, submit to the voters of Bloom Township High School, District No. 206, the privilege of increasing our levy to the additional two-thirds of one per cent, as allowed by the School Law of Illinois. (Sec. 1, Article 189—Act approved June 12, 1909.) On roll-call the following voted Yea: "Pres. Gunn, Mr. Wallace, Mr. Macke, Mrs. Michalek and Mr. Angus. Motion carried." The record of this meeting, it will be observed, did not contain a resolution, as prescribed by section 189, and neither it nor the record of any subsequent meeting contained a copy of the notice of election. A photostatic copy which was preserved recites that an election will be held on April 9, 1921, for the purpose of electing two members of the board of education and, also, "for the purpose of voting for or against the proposition to authorize the Board of Education to levy the additional two-thirds of one per cent as provided by law, for Educational purposes." The minutes of the meeting held on March 10, 1921, were approved at a meeting of the board on the following April 14. From the record of this meeting it appears that a canvass of the returns of the high school election held April 9, 1921, showed that 111 votes were cast in favor of and 14 votes against the "privilege of levying additional ⅔ of 1%." The canvass was approved, as reported. Shortly after the election in 1921, section 189 of the School law was amended by an act approved June 27, 1921, effective July 1, 1921. (Laws of 1921, p. 818.) By the amendment, the board of education of the district was authorized to levy annually a tax not to exceed two per cent for educational purposes, and, upon a favorable vote of the legal

voters of the district, to levy a tax not to exceed three per cent for educational purposes. When the levy for educational purposes for the year 1921 was made, section 189, it thus appears, empowered the board of education to levy a tax for educational purposes up to two per cent of the assessed valuation, without a referendum. In any event, the board, it is conceded, did not certify the result of the election to the county clerk until May 27, 1938, and did not resort to the rate claimed to have been approved by the election until the levy for educational purposes for 1938 was made. Amendments to section 189 in 1923 and 1925 did not change the provisions relevant to the present action. In 1927, the General Assembly changed the basis of assessed valuation of property from one-half of full value to full value. (Laws of 1927, p. 745.) As the result of an act amending section 189 of the School law, approved the same day, July 7, 1927, (Laws of 1927, p. 824,) the tax rate of school district No. 206 for educational purposes was correspondingly reduced to one per cent without, and to a maximum of one and one-half per cent after, a referendum. The rates under section 189, as amended in 1927, applied to a full valuation would produce the same amount of taxes as the higher rates applied to the one-half assessed valuation which previously obtained. Although section 189 has been amended several times since 1927 no changes have been made by the successive amendments pertinent to the issues here involved.

In 1938, the discovery was made that a meeting of the board of directors on March 10, 1921, as narrated, had taken action with respect to a proposed election to vote on the matter of increasing the tax rate for educational purposes. No member of the school board in May, 1937, when the proposition of increasing the tax rate from one to one and one-half per cent was so decisively defeated, had been a member of the board in 1921, and, according to the attorney for the board, no member, as it was then constituted,

had any knowledge of the election in 1921. August 26, 1940, a special meeting of the board of education amended the minutes of the meetings held on March 10 and April 14, 1921. The record of the 1940 meeting recites that the tax rate for educational purposes was then in litigation; that the rate was dependent upon the results and effect of the election held on April 9, 1921; that the records of the meetings held on March 10 and April 14, 1921, so far as relevant to the election, were incomplete and contained errors and omissions inadvertently made by the then secretary. To the end of correcting the minutes and record by amending it to speak the truth, statements and affidavits were presented and the testimony of two members of the board and the township treasurer in 1921 was heard concerning the meetings mentioned and the school election. The attorney for the school district testified that he had searched diligently but was unable to find any poll-book or any copies of the ballots used at the election, and stated, further, that the poll-books and ballots had been lost or destroyed. The affidavits of Florence Michalek and Frank DeBoldt, members of the board in March and April, 1921, and C. H. Kappmeyer, who was then township school treasurer, set forth that two ballots were used at the election, April 9, 1921, one for the purpose of voting upon members to be elected to the board and the second on the proposition of increasing the tax rate for educational purposes. The affiants admitted that they did not remember the exact wording of the separate ballot concerning the increase in the tax rate but averred that they did definitely remember the wording and form of the ballot was sufficient to inform them, and all other voters, of the question or proposition to the effect that the board be authorized to levy an additional two-thirds of one per cent for educational purposes in addition to the then authorized maximum rate of one and one-third per cent, and, further, that they remembered the ballot afforded an opportunity to vote "yes" or "no"

upon such proposition. In addition, the attorney for the board presented a statement of H. E. Gunn, president of the board in 1921, that the board intended to and, did, on April 9, 1921, comply with the law, and that the minutes were incorrect or incomplete if they did not specifically and formally show the calling of a special election on the question of the increase of rate. Mrs. Michalek, who was present at the meeting on April 14, 1921, when the minutes of the March 10 meeting were read and approved, stated that the members talked about a special election at the meeting last mentioned, and that it was her intent and desire to comply with the law in all respects. DeBolt's testimony at the meeting on August 26, 1940, is to the same effect. Newspaper items were presented to this same meeting which urged the voters of the school district to vote for the levy of an additional tax of two-thirds of one per cent, and, according to one of the newspapers, "in order that the school may have sufficient funds to meet its indebtedness, and keep the school up to its present efficiency." Upon the basis of the foregoing testimony, the board amended the minutes of the meeting of its predecessor held on March 10, 1921, by adding a resolution reading, in part: "Resolved that a special election be, and hereby is called, to be held in this school district on April 9, 1921, at the same time and places as the regular election for Board members, for the purpose of voting for or against the proposition to authorize the Board of Education to levy the additional two-thirds of one per cent, as provided by law, for educational purposes." The minutes of the meeting held on April 14, 1921, were amended in considerable detail with respect to the canvass of returns of the special election.

Application of familiar principles to the foregoing facts impels the conclusion that the school district was without authority to levy taxes for educational purposes for the year 1938 in excess of one per cent. Tax laws, we have

frequently announced, must be strictly construed; they are not to be extended by implication beyond the clear import of the language employed, and, in case of doubt, are to be construed most strongly against the government and in favor of the taxpayer. (*People* v. *New York, Chicago and St. Louis Railroad Co.* 371 Ill. 522; *People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 360 id. 180.) By section 112 of the School law, (Ill. Rev. Stat. 1939, chap. 122, par. 120, p. 2885) one of the duties of the clerk is to keep in a punctual, orderly and reliable manner, a record of the official acts of the board which shall be signed by the president and the clerk. Where officials, as here, are required to keep a record of the proceedings of their offices, the record constitutes the only lawful evidence of action taken and cannot be contradicted, added to, or supplemented by parol. (*People* v. *City of St. Louis,* 367 Ill. 57; *People* v. *Morris,* 365 id. 470; *People* v. *Hartquist,* 311 id. 127; *People* v. *Vail,* 296 id. 61.) A record cannot be changed to state that a certain action was taken which, in fact, was not taken, nor is it proper to amend the record where the parol testimony is uncertain. (*People* v. *Commonwealth Edison Co.* 367 Ill. 260; *People* v. *Chicago, Milwaukee and St. Paul Railroad Co.* 326 id. 179.) In short, the statute requires that a record be kept of the essential steps in levying a tax, and, conversely, they cannot be left to the uncertain memory of clerks or officers. *People* v. *Morris, supra; People* v. *Toledo, St. Louis and Western Railroad Co.* 270 Ill. 472; *People* v. *Chicago, Lake Shore and Eastern Railway Co.* id. 477; *City of Covington* v. *Ludlow,* 1 Metcalf (Ky.) 295.

Recourse to the minutes of the meeting of March 10, 1921, later approved by the board on April 14, 1921, discloses that the board voted favorably upon a motion to submit to the voters "the privilege of increasing our levy to the additional two-thirds of one per cent, as allowed by the School Law of Illinois" but the resolution then

adopted, if any, was not included. Another vice of the original record of proceedings of the board of education with respect to the election held in 1921 is that the form of ballot used at the election is not, and cannot be, shown. Indeed, the present board recognized that the action of the members of the board in 1921 did not afford an adequate basis for holding an election, and, as recounted, on August 26, 1940, amended the minutes of the meetings of March 10 and April 14, 1921, so far as the earlier records pertained to the election held on April 9, 1921. The amendments were made upon the basis of the testimony of two former members of the board, the affidavits of these two and the township treasurer, the statement attributed to a former president of the board, the statement of the attorney for the board, and several newspaper items published in 1921. The testimony on which the board acted in 1940 fails to disclose what resolution for calling a special election, if any, was passed or what motion, if any, was then made. Moreover, the testimony does not purport to supply the form of the missing ballot. The mere fact that the affiants professed to have understood they were voting upon the question of the tax rate does not necessarily mean that the ballots were in proper form. In the absence of the form of ballot used we cannot determine, by sheer speculation, whether a separate and unrelated proposition appeared on the same ballot. If so, the election. was necessarily void. (*People* v. *Baltimore and Ohio Southwestern Railroad Co.* 372 Ill. 38; *Williams* v. *People,* 132 id. 574.) Obviously, the amendments to the 1921 proceedings made more than nineteen years afterwards do not constitute the keeping of a punctual, orderly and reliable record of the board's actions in 1921. There is nothing of record on which to base the amendments and they rest wholly on testimony *dehors* the record. The amendments made in 1940 by an entirely different board of officials, based upon the uncertainty of the

individual memories of a few of the participants in the earlier proceedings, were without a legal basis.

*People* v. *Payne,* 296 Ill. 483, relied upon by the collector, holds that an additional tax for school purposes authorized by an election in 1914 under section 189 of the School law, as amended in 1913, may be levied annually thereafter until revoked by an election, as subsequent amendments to section 189 did not operate as a repeal and did not change the limitation for the additional tax. The validity of the election in 1914 was not attacked by the objector in the *Payne case,* and it follows, necessarily, that the authority invoked is not decisive here.

The judgment of the county court is affirmed.

*Judgment affirmed.*