(No. 32940.—

WESTERN SAND & GRAVEL COMPANY, Appellant, vs. THE
TOWN OF CORNWALL *et al.*, Appellees.

*Opinion filed March 17, 1954—Rehearing denied May 19, 1954.*

ANDREWS & ANDREWS, and WELCH & WELCH, both of Kewanee, for appellant.

SHAW & CHAMBERLAIN, of Geneseo, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This suit was instituted in the circuit court of Henry County by Western Sand & Gravel Company, a corporation, plaintiff, against the Town of Cornwall *et al* for the recovery of a deposit made with a bid for road improvements. The trial court entered judgment against the defendant Town of Cornwall only. It appealed to the Appellate Court for the Second District and plaintiff filed a cross appeal. The Appellate Court reversed the trial court in respect to the judgment against the town and affirmed the judgment in favor of the other defendants. On petition of the plaintiff we have granted leave to appeal.

This dispute arises out of a proposal by plaintiff for the furnishing and spreading of road gravel upon roads located in Cornwall Township and the supplying of gravel for stock piling. Sealed bids were invited for 40,000 cubic yards of gravel spread upon certain roads and 5,000 additional cubic yards of gravel to be stock piled, using unit prices, and providing for an increase or decrease in quantities up to 25 per cent without any change in the unit

price. Plaintiff's bid was $1.43 per cubic yard on gravel to be spread and 65 cents per yard on gravel stock piled, or a total based upon estimated quantities of $60,450. Accompanying the bid was a cashier's check for $7000, which was $955 in excess of ten per cent of the base bid. Such excess was repaid to plaintiff and it is now seeking to recover the balance of $6045 plus interest.

The notice to contractors was by order of the town board of Cornwall Township, Henry County, Illinois, "By William Sleaford, Commissioner of Highways, Cornwall Township, Henry County, Illinois." Proposal blanks were furnished bidders and plaintiff's bid was upon one of the blank forms so provided. The letting was held September 18, 1943, and upon opening the bids it was found that plaintiff's bid on gravel spread was low by $21,200, the unit bid being $1.96 per cubic yard. The condition of the proposal was that if it be accepted and the bidder failed to execute a contract and furnish a performance bond, the deposit became the property of the "Township" in payment of damages; otherwise to be returned to the bidder.

At the request of the highway commissioner the county superintendent of highways of Henry County prepared contract forms, which were mailed to plaintiff on October 4, 1943. The accompanying letter stated that the township officials had requested that it be considered a notice of award. The record is not clear whether these contracts used the unit price in the bid or a larger figure. In any event no contract at the bid figure was ever signed or made a part of the record. There appears to have been a question whether plaintiff had made a mistake in its bid or whether it could furnish gravel at the bid price. On October 28, 1943, the board of town auditors passed a resolution which related in the preamble that plaintiff was willing to enter into a contract in accordance with the plans if it were allowed $1.68 per cubic yard for gravel

in place rather than $1.43 per yard. The resolution authorized and advised the highway commissioner to enter into a contract for the higher figure. A contract dated November 2, 1943, was executed by plaintiff and approved by the county superintendent of highways. It was therein related that the proposal as revised and modified by the resolution of the town board was attached as a part thereof. The party of the first part was therein designated as "Township of Cornwall" acting by and through its township road commissioner.

The highway commissioner wrote to plaintiff on November 15, 1943, saying that he had the contract but that he was not going to sign it "until work was started." He again wrote on December 11, 1943, advising that unless work was commenced by December 15 it would be necessary to decline to execute this contract and cash plaintiff's check. The contractor's bond was returned to plaintiff by the town's attorney and the accompanying letter of January 19, 1944, stated that plaintiff's $7000 check had been cashed and a check for $955 was enclosed. The record discloses that the check was cashed and the net proceeds deposited to the credit of the road and bridge fund.

The original complaint named Cornwall Township as party defendant and the amended complaint designated The Town of Cornwall, Henry County, Illinois, as sole defendant but after some evidence and before the conclusion of the trial Charles Sears, as treasurer of the town of Cornwall, Charles Sears, as treasurer of the road and bridge fund of the town of Cornwall and Charles Sears, individually, were made additional defendants. Two additional counts were filed, one against the added defendants, which alleged that the check was payable to the treasurer of Cornwall Township and that in one of his official capacities, or individually, he cashed the check and holds the proceeds belonging to plaintiff. The other count was

against the town of Cornwall in the nature of a count for money had and received.

The first question for consideration is whether plaintiff's proposal was legally accepted. Assuming, for the sake of argument, that the town of Cornwall was the offeree, no official acceptance was made by the board of town auditors, its governing body. On the contrary, it indicated by the passage of the resolution increasing the unit price, that a proposal other than the one made by plaintiff be accepted. This constituted, if anything, a counterproposal. It is elementary contract law that a counteroffer relieves the offeror of his original offer. There was no valid acceptance by the corporate entity, the town of Cornwall.

The only other possible offeree is the highway commissioner, who is a *quasi*-corporation. As such it was his duty to cause a record to be preserved of his official acts. The official recorder and custodian of the corporate records of the highway commissioner is the town clerk. The statutes provide in part, "He [Town Clerk] shall record in the book of records of his district, all orders and directions of the highway commissioner required by law to be kept, and as hereafter provided for." (Ill. Rev. Stat. 1943, chap. 121, par. 57.) We have repeatedly held that the official acts of municipal corporations must be recorded and the records are the only lawful evidence of the action to which they refer. Such record cannot be contradicted or supplemented by oral evidence. (*People ex rel Greenwood* v. *Board of Supervisors,* 125 Ill. 334; *Trust Co. of Chicago* v. *Village of Lincolnwood,* 385 Ill. 236; *People ex rel. Mark* v. *Hartquist,* 311 Ill. 127.) The acceptance of bids for a substantial improvement, such as appears in this case, is certainly an official act and as such must be recorded.

The town clerk's records disclosed that there was no official action recorded relative to the acceptance of the

bid by the highway commissioner during the year 1943 nor in any year subsequent thereto until July 12, 1947. On that date a successor highway commissioner adopted a resolution attempting to supply a record of the proceeding from the time of the receipt and opening of bids on September 18, 1943, to and including an entry on December 2, 1943, directing the forfeiture of $6045 of plaintiff's deposit and directing the return of $955. This resolution was then recorded by a successor town clerk who knew nothing of the original transaction.

Defendants' exhibits 8 and 9, admitted over the objections of plaintiff, consisted only of those pages of the clerk's record which recited the resolution. Plaintiff's exhibit 11 consisted of the entire record from 1943, prior to the date of letting, to and including the resolution. Defendants now contend that, since the admission of defendants' exhibits 8 and 9 was not claimed to be grounds for reversal, the question of admissibility is moot. With that contention we agree. The question of the validity and authenticity of the record is another matter. Defendants erroneously assume that if the exhibits be admitted they are authentic and cannot be questioned. The only means for presenting the matter is to show the whole of the official records pertaining to the transaction so the court can examine the manner in which the records were changed.

While the courts have permitted the amendment of records in certain cases, it cannot be done where the oral testimony is uncertain. (*People ex rel. Toman* v. *Chicago Heights Terminal Railroad Co.*, 375 Ill. 590; *People* v. *Commonwealth Edison Co.*, 367 Ill. 260.) The amendments here made were purely upon information furnished almost four years later by William Sleaford who was commissioner of highways at the time of the alleged transactions. We would have to resort to conjecture to determine whether his memory was perfect and whether the entire transaction was shown in the record later sup-

plied. While the commissioner's resolution relates that plaintiff had not signed a contract at the bid price and that he had asked advice from the town board as to what action he should take, it is entirely silent as to any offer made by him to execute a contract for a higher figure. This disputes the fact that his letters of November 15, and December 11, 1943, acknowledged that he had a signed contract in his hands and each refers to his intention to sign the contract when work commenced. The record does not disclose how the signed contract came into his hands although it is apparent that he had accepted but not signed it. Furthermore, the purported complete record of the transaction failed to recite anything relative to the later negotiated bid or any agreement to negotiate a new bid.

We are of the opinion that the proposal of plaintiff was never legally accepted by the highway commissioner nor any other person or body politic authorized to do so and, therefore, the purported forfeiture of the deposit was illegal and void.

The remaining question presented is from whom, if anyone, plaintiff is entitled to recover.. The defendant town of Cornwall denies liability on the grounds that its jurisdiction does not extend to roads and that it did not take nor receive any of the funds in question. While the invitation to bidders, form of proposal and form of contract all carry the name of "Town of Cornwall" or "Cornwall Township," it cannot be regarded as the offeree. The confusion as to parties appears to result from a misconception of township organization which provides for a clerk and treasurer serving in dual capacities. A town is a separate and distinct municipal corporation and has no power or authority over roads. The highway commissioner is a *quasi*-corporation having jurisdiction over township roads. (Ill. Rev. Stat. 1943, chaps. 121 and 139; *American Mexican Refining Co.* v. *Wetzel,* 350 Ill. 575; *People ex rel. Book* v. *Baltimore and Ohio Railroad Co.,*

322 Ill. 623.) Any reference in the contract documents to the Town or Township, other than to identify the geographical area or political subdivision wherein the roads were to be improved, must be regarded as surplusage. (*People ex rel. Ward* v. *Illinois Central Railroad Co.*, 374 Ill. 92.) The funds involved, while converted by the defendant Sears, were not, according to the evidence, converted by him as ex-officio treasurer of the town of Cornwall. We are of the opinion that no cause of action exists against the town of Cornwall nor against the treasurer of the funds of said town as such.

It is assumed by counsel for the defendants that since the highway commissioner of the geographical area of Cornwall Township is not a party defendant no judgment can be entered payable from road and bridge funds. As a general rule a municipal corporation may not sue or be sued in the name of its officers or agents. Due to the peculiarity of township government in Illinois the treasurer of road funds is not an officer of the *quasi*-corporation represented in the office of highway commissioner. He is the exclusive collector and custodian of the funds expendable for road purposes, while the highway commissioner has the authority only to expend, not receive, road funds. If this action was one based upon the acts of the highway commissioner, he, as a *quasi*-corporation, would be a necessary party. In this suit the treasurer of the road and bridge fund is one of the defendants and recovery is sought for his alleged conversion of funds. The action cannot be predicated upon the action of the highway commissioner since we have herein held that there was no acceptance of the proposal by him and that his later attempt to accept and forfeit was void.

This action must therefore be successful against the treasurer, not as an individual, since there was no conversion to his own use, but as treasurer of the road and bridge fund, and judgment should be entered against him

in that capacity for $6045, the remaining amount of the deposit not heretofore paid plaintiff. Judgment may not be entered for interest since it is payable from municipal funds, although indirectly through the treasurer thereof. *American Mexican Refining Co. v. Wetzel,* 350 Ill. 575.

The judgment of the Appellate Court is reversed and the judgment of the circuit court is modified by setting aside the judgment against the Town of Cornwall, Henry County, Illinois, and by setting aside the judgment in favor of Charles Sears as treasurer of the road and bridge fund of the Town of Cornwall and the cause is remanded to the circuit court with directions to enter judgment for the plaintiff against Charles Sears and his successors in office as treasurer of the road and bridge fund of the Town of Cornwall for $6045.

> *Judgment of Appellate Court reversed;*
> *Judgment of circuit court modified and remanded*
> *with directions.*