NERI BROTHERS CONSTRUCTION, Plaintiff-Appellant, v. THE VILLAGE OF EVERGREEN PARK *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—05—0431

Opinion filed December 7, 2005.

O'Hagan, Smith & Amundsen, L.L.C., of Chicago (Michael Resis and Elana K. Seifert-Rivera, of counsel), for appellant.

Louis F. Cainkar, Ltd., of Chicago (Michael G. Cainkar, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

This is an appeal by the plaintiff, Neri Brothers Construction (Neri), from an order of the circuit court of Cook County which confirmed a decision of a hearing officer employed by the Village of Evergreen Park (Village) imposing a fine and assessing remedial costs against Neri pursuant to the Village's "spiller-pays" ordinance. For the reasons that follow, we affirm in part and reverse in part.

The record reflects that the parties entered into stipulations during the course of the administrative proceedings and, as a consequence, the relevant facts are undisputed.

Abbey Paving (Abbey) engaged Neri as a subcontractor to install sewer lines and a water main underneath the Evergreen Park Shopping Plaza parking lot. Prior to commencing work on the project, Neri's president, Nick Neri, and Abbey's president, Joseph Madden, both contacted the Joint Utilities Location Information for Excavators (JULIE), the "State-Wide One-Call Notice System" (see 220 ILCS 50/4(d) (West 2002)), and requested the location and marking of all utilities in the area of the work to be performed.

When Nick Neri arrived at the work site on May 27, 2003, there were markings present for underground water pipes, sewer lines, telephone wires, gas lines, and electric wires. The locations of the gas lines were indicated by yellow paint. Nick Neri commenced the excavation using a backhoe/loader. When he reached a depth of two to three feet, the backhoe struck a two-inch plastic gas line which had not been marked. There were no markings in the vicinity which would have indicated the presence of the gas line; the closest gas line marking being 50 feet from the location where he struck the line.

After hitting the gas line, Nick Neri immediately called "911," reported the ruptured line, and removed his equipment from the area. The Village's fire department and public works department responded to the call along with assistance from the Oak Lawn and Roberts Park

fire departments. The parties stipulated that the "reasonable and necessary costs" expended by the Village to mitigate and abate the discharge of natural gas totaled $7,860.

The Village issued Neri a citation pursuant to its "spiller-pays" ordinance, Evergreen Park Municipal Code sections 7—156 through 7—161, which provides as follows:

"ARTICLE V. DISCHARGE OF HAZARDOUS MATERIALS

Sec. 7—156. Definitions

The following words, terms and phrases, when used in this article, shall have the meaning ascribed to them in this section, except where the context clearly indicates a different meaning:

*Occurrence* means any discharge or threatened discharge of hazardous materials.

*Responsible party* means any person who owns, leases, operates or controls any facility, equipment or vehicles from which a discharge of hazardous materials has occurred or from which such a discharge has threatened to occur.

Cross reference—Definitions and rules of construction generally, § 1—2.

Sec. 7—157. Charges for services.

There shall be charges for services rendered by the fire department to any person who owns, leases, operates or controls any facility, equipment or vehicles from which a discharge of hazardous materials (responsible party) has occurred or from which such a discharge has threatened to occur (occurrence) within the boundaries of the village.

(Ord No. 26—1990, § 1(12—121), 12-17-90)

Sec. 7—158. Responsible party liability.

Any responsible party, unless otherwise exempt, shall be charged for the services of the fire department for occurrences at the rate to be determined by the board of trustees. Replacement cost value for the expended item is for the necessary mitigation of the incident.

(Ord No. 26—1990, § 1(12—122), 12-17-90)

Sec. 7—159. Charges for mutual aid assistance.

If it is deemed by the fire chief necessary for the fire department to request mutual aid assistance, the responsible party shall be charged for the services of each mutual aid company at the rates charged by the responding entity.

(Ord No. 26—1990, § 1(12—123), 12-17-90)

Sec. 7—160. Charges for first district hazards materials response team.

If it is deemed by the fire chief necessary for the fire department to request assistance from the first district hazard materials response team, the responsible party shall be charged for the

services for the first district hazardous materials response team at the rate according to the actual cost as determined by the team. (Ord No. 26—1990, § 1(12—124), 12-17-90)

Sec. 7—161. Charges for commercial hazardous materials contractor.

If it is deemed by the fire chief necessary in the resolution of an occurrence for the fire department to call in a separate specialized service or cleanup contractor, the responsible party shall be responsible for payment to the specialized service or cleanup contractor per reasonable payment terms as defined by the contractor.

(Ord No. 26—1990, § 1(12—125), 12-17-90)'' Evergreen Park Municipal Code §§ 7—156 through 7—161 (1990).

Following an administrative hearing, the Village's hearing officer rendered a decision in which he imposed a $250 fine and found Neri responsible for the Village's costs of "remediation" in the sum of $7,860.

Neri filed a complaint for administrative review in the circuit court of Cook County. The circuit court confirmed the administrative decision, and this appeal followed.

In urging reversal on appeal, Neri argues both that it is not liable under the terms of the Village's ordinance as it did not own, lease, operate or control the source of the gas leak, and that the Illinois Underground Utility Facilities Damage Prevention Act (Act) (220 ILCS 50/1 *et seq.* (West 2002)) bars the assessment of penalties and costs against an innocent excavator that damages an underground gas line. We first address Neri's preemption argument.

■ At all times relevant, section 11(c) of the Act (220 ILCS 50/11(c) (West 2002)) provided:

"Every person who, while engaging in excavation or demolition, has provided the notice to the owners or operators of the underground utility facilities or CATS [(community antenna television system)] facilities in and near the excavation or demolition area through the State-Wide One-Call Notice System as required by Section 4 of this Act, but otherwise, while acting reasonably, damages any underground utility facilities or CATS facilities shall not be subject to a penalty, but shall be liable for the damage caused to the owners or operators of the facility provided the underground utility facility or CATS facility is properly marked as provided in Section 10 of this Act."

There can be no disputing the fact that the gas line which Nick Neri struck while excavating falls within the statutory definition of "underground utility facilities." See 220 ILCS 50/2.2 (West 2002).

■ Section 14 of the Act provides:

"The regulation of underground utility facilities and CATS facili-

ties damage prevention, as provided for in this Act, is an exclusive power and function of the State. A home rule unit may not regulate underground utility facilities and CATS facilities damage prevention, as provided for in this Act. *** This Section is a denial and limitation of home rule powers and functions under subsection (h) of Section 6 of Article VII of the Illinois Constitution." 220 ILCS 50/14 (West 2002).

Relying on sections 11(c) and 14 of the Act, Neri argues that the State has preempted the regulation of underground utility facilities damage prevention and, as a consequence, the Village exceeded its power as a home rule unit when it cited Neri pursuant to its "spiller-pays" ordinance and its hearing officer thereafter imposed a fine and assessed remediation costs under the provisions of that ordinance. According to Neri, when, as in this case, an excavator has complied with the Act and, nevertheless, damages an unmarked underground utility line, the excavator may not be held liable or penalized under the provisions of any ordinance enacted by a home rule unit.

The Village takes the position that its ordinance does not regulate underground utilities or damage prevention arising from excavation or demolition activities and is, therefore, not preempted by the provisions of the Act. The Village asserts that its ordinance only provides for reimbursement of its remediation costs.

■ Except as limited by the provisions of article VII, section 6, of the Illinois Constitution, home rule units such as the Village "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). Article VII, section 6(a), of the Illinois Constitution gives home rule units "the broadest powers possible." Scadron v. City of Des Plaines, 153 Ill. 2d 164, 174-75, 606 N.E.2d 1154 (1992). Nevertheless, except in certain circumstances not relevant to this case, "[t]he General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(h).

There is no question that, in enacting section 14 of the Act, the General Assembly exercised its power under article VII, section 6(h), of the Constitution and reserved for the State the exclusive power to regulate underground utility facilities damage prevention and denied home rule units the power to regulate the subject. The question remains, however, whether enforcement of the Village's "spiller-pays" ordinance, which provides for the recovery of remediation expenses, is preempted by section 14 of the Act when those expenses are incurred by reason of damage to an underground utility line during excavation.

■ Section 6(m) of article VII of the Constitution provides that the "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m). To that end, we believe that any limitation on the power of home rule units by the General Assembly must be specific, clear, and unambiguous. Absent such a limitation, we will not find preemption. See *Town of Cicero v. LaFrancis*, 282 Ill. App. 3d 556, 558, 668 N.E.2d 164 (1996).

■ Although section 14 of the Act clearly preempts the power of home rule units to regulate underground utility facilities damage prevention, the statute says nothing about the ability of a home rule unit to recover remediation expenses incurred as a result of damage to an underground utility line during an excavation. Ordinances aimed at damage prevention are entirely different in kind than those which grant a right to recover remediation expenses. An examination of the Act in its entirety leads us to conclude that its purpose is to prevent negligent practices in excavation and demolition operations which endanger persons, property, and utility services, and its full title supports that conclusion. See 220 ILCS 50/1 (West 2002). In contrast, the Village's "spiller-pays" ordinance merely provides for the recoupment of expenses incurred by the Village by reason of the discharge, or threatened discharge, of hazardous materials. None of the provisions of the ordinance have anything to do with the prevention of such discharges. For these reasons, we do not believe that the ordinance at issue in this case is preempted under section 14 of the Act. Our analysis of the preemption issue, however, does not end here.

■ Neri sought administrative review of a decision which not only found it liable to the Village for $7,860 in remediation expenses but also assessed a fine against it in the sum of $250. Aside from the fact that the Village ordinance under which Neri was cited does not provide for the assessment of fines, we believe that any fine that might be assessed against Neri for having struck the gas line would be preempted by the Act. Section 11 of the Act provides for penalties against those who wilfully fail to comply with the notice provisions of the Act and those who, although complying with the notice provisions, otherwise wilfully fail to comply with the provisions of the Act and damage an underground utility facility. 220 ILCS 50/11(a), (b) (West 2002). Section 11 also provides, however, that those who comply with the provisions of the Act and who, while acting reasonably, nevertheless, damage an underground utility facility "shall not be subject to a penalty." 220 ILCS 50/11(c) (West 2002). Providing for fines against those who damage underground utility facilities while excavating a site or demolishing a structure is a component of the regulation of damage prevention and has been specifically preempted under section 14 of the Act.

Based on the foregoing analysis, we reverse that portion of the circuit court's decision which affirmed the $250 fine levied against Neri by the hearing officer. Although we have determined that the assessment of $7,860 in remediation expenses against Neri under the Village's "spiller-pays" ordinance is not preempted by the Act, we must still address Neri's argument that it cannot be held liable under the provisions of the ordinance itself.

The ordinance at issue provides that a "responsible party" shall be charged for certain remediation expenses incurred by the Village by reason of the discharge, or threatened discharge, of hazardous materials within the boundaries of the Village. Evergreen Park Municipal Code §§ 7—157 through 7—161 (1990). As noted earlier, the ordinance defines a "responsible party" as "any person who owns, leases, operates or controls any facility, equipment or vehicles from which a discharge of hazardous materials has occurred or from which such a discharge has threatened to occur." Evergreen Park Municipal Code § 7—156 (1990). Neri argues that it did not own, lease, operate or control the underground line from which the discharge of gas occurred and, as a consequence, it is not a "responsible party" liable under the ordinance for remediation expenses. The Village does not assert that Neri either owned, leased or operated the gas line. It does, however, argue that Neri controlled the line at the time of the discharge and, as a result, falls within the ordinance's definition of a "responsible party."

Municipal ordinances are interpreted by applying traditional rules of statutory construction. *City of Marengo v. Pollack*, 335 Ill. App. 3d 981, 986, 782 N.E.2d 913 (2002). As such, our function is to ascertain and give effect to the intent of the enacting legislative body (*Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 194, 595 N.E.2d 561 (1992)), the clearest indicator of which is the language of the ordinance itself (*City of Marengo*, 335 Ill. App. 3d at 986; *People v. Bryant*, 128 Ill. 2d 448, 455, 539 N.E.2d 1221 (1989)). Terms which are not defined in an ordinance are to be given their plain and ordinary meaning. See *In re Consolidated Objections to Tax Levies of School District No. 205*, 193 Ill. 2d 490, 497, 739 N.E.2d 508 (2000). When the language of an ordinance is clear and unambiguous, it is to be applied without further aids of construction. See *People v. Bole*, 155 Ill. 2d 188, 197, 613 N.E.2d 740 (1993). The construction of a statute or ordinance is an issue of law and our review is, therefore, *de novo*. See *Williams v. Staples*, 208 Ill. 2d 480, 487, 804 N.E.2d 489 (2004).

The ordinance at issue does not define the phrase "controls any facility" as used to determine those who fall within the classification of a "responsible party" subject to liability for remediation expenses.

When interpreting the language of an ordinance, the ordinance must be read as a whole (see *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 318, 547 N.E.2d 437 (1989)) and consideration should be given to the reason for its enactment and the purpose to be achieved (*Stewart v. Industrial Comm'n*, 115 Ill. 2d 337, 341, 504 N.E.2d 84 (1987)). The language used should be given the fullest rather than the narrowest possible meaning to which it is susceptible. See *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 423, 519 N.E.2d 459 (1988).

The word "control" can be broadly defined as "to have power over." Webster's Third New International Dictionary 496 (1993). When Nick Neri began digging, he was exercising power over the excavation site and that which was contained beneath the surface, including the gas line that he struck and ruptured. Nick Neri was acting in his capacity as an employee of Neri and, as a consequence, we believe that Neri had control over both the excavation site and the underground gas line. Accordingly, we find that Neri fell within the definition of a "responsible party" as set forth in the Village's "spiller-pays" ordinance and, therefore, reject Neri's contention that it could not be held liable for remediation costs.

In summary, we reverse that portion of the circuit court's judgment which confirmed the $250 fine assessed against Neri, affirm the circuit court's judgment in all other respects, and reverse that portion of the hearing officers' decision which assessed the $250 fine.

Affirmed in part and reversed in part.

THEIS and ERICKSON, JJ., concur.