In the

# United States Court of Appeals
### For the Seventh Circuit

No. 09-2082

PRO'S SPORTS BAR & GRILL, INC.,
THARON BRADLEY, CARLA NELSON
and PATRICIA NELSON,

*Plaintiff-Appellees,*

*v.*

CITY OF COUNTRY CLUB HILLS,
an Illinois Municipal Corporation,
DWIGHT WELCH, Mayor
and DEBORAH M. MCILVAIN, Clerk,

*Defendant-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08-cv-6031—**Joan B. Gottschall**, *Judge.*

ARGUED OCTOBER 29, 2009—DECIDED DECEMBER 16, 2009

Before FLAUM, MANION, and WOOD, *Circuit Judges.*

FLAUM, *Circuit Judge.* This is a dispute between a bar, Pro's Sports Bar & Grill ("Pro's"), and the City of Country Club Hills (the "City") over a liquor license. Pro's claims

that it was given the standard liquor license for bars in Country Club Hills. The City claims that the bar was given a license that allows it to operate only with more restricted hours than is typical. The license initially given to Pro's made no mention of an hours restriction. After the City reissued the license with the restricted hours and began enforcing them—without a hearing or a vote by the city council—Pro's brought a claim against the City under 42 U.S.C. § 1983, alleging a violation of both its procedural due process rights and its right to equal protection. Pro's then moved for a preliminary injunction prohibiting the City from enforcing the limited hours. The district court found that Pro's was likely to prevail on its due process claim (but not its equal protection claim)[1] and faced irreparable harm if forced to continue operating under the more limited hours. The district courted granted the preliminary injunction. The City appeals. For the reasons set forth below, we affirm the district court's decision.

## I. Background

Pro's is located at 18601 South Cicero Avenue, in the City of Country Club Hills, a southern suburb of Chicago. Tharon Bradley, Carla Nelson, and Patricia Nelson, the owners of Pro's, are also plaintiffs in this litigation. The City of Country Club Hills is governed by an elected mayor, an elected clerk, and ten elected aldermen (two from each of the City's five wards). The mayor, Dwight

---

[1] On appeal, Pro's does not rely on its equal protection claim.

Welch, and the clerk, Deborah McIlvain, are named as defendants, along with the City itself.

To obtain a liquor license in Country Club Hills, a business must apply and satisfy certain preliminary requirements. The applicant must then secure from the city council an ordinance granting that particular business a license. The municipal code in Country Club Hills defines several types of liquor licenses, two of which are relevant here: Class A, for restaurants, and Class B, for bars. The code also sets the permissible hours of operation for these establishments. Both Class A and Class B licenses allow the holder to remain open until 2 a.m., Monday through Friday, and 3 a.m. on Saturday and Sunday.

Pro's satisfied the application requirements for a liquor license, and the city council considered an ordinance to grant Pro's a license on November 26, 2007. The parties dispute what took place at this meeting. Helpfully, the meeting was videotaped. The district court viewed this video and summarized it in its written opinion granting the preliminary injunction.

Thirty-nine minutes into the meeting, the council turned to the "Economic Development" portion of its agenda, the only item being whether to pass an ordinance granting Pro's a liquor license. Alderman Tyrone Hutson, one of the aldermen for Ward 3, where Pro's is located, was granted the floor. He did not immediately introduce the proposed ordinance, however. Instead, he began by explaining that he wished to "amend the ordinance, and place a time frame on the liquor license." He proposed limiting the hours of

alcohol sales to 11 p.m. on weekdays and 12:30 a.m. on weekends. At Mayor Welch's direction, Hutson introduced the amendment via motion. Hutson called for a vote, but Welch stated that a discussion of the amendment must occur first. Welch spoke for about three minutes about the license process generally, then observed that Pro's was surrounded by residential zoning. Welch said that he did not have a problem with the hours proposed by Hutson and emphasized that Pro's license, like all other licenses, would last only until May 1 of the following year, at which time it would need to be renewed. He indicated that he traditionally defers on decisions related to liquor licenses to the aldermen from the particular ward where the business is to be located and asked "Tom" if he had "anything to say." "Tom" is not identified in the video but was presumably Thomas Comein, the other alderman from Ward 3. He agreed with proposed hours and said that if there was a problem, the police would take care of it.

Another alderman, Vincent Lockett, suggested moving the weekday closing time to 11:30 p.m. so that patrons would not have to leave before sporting events, such as Monday Night Football, had ended. Welch opposed the change, saying that just because the bar had to stop serving liquor did not mean that patrons had to leave.[2] Welch then said, seemingly to someone in the crowd, "You guys good with that? All right. All right. Let's move on."

---

[2] This appears to be an incorrect statement of law. *See* Country Club Hills Municipal Code, § 13.3.06.

No vote was taken on the amendment. Instead, after Welch directed the council to "move on," Hutson introduced, by motion, the original ordinance, a draft of which had been prepared before the council meeting. Hutson introduced it as "an ordinance providing for the granting of a Class A liquor license" to Pro's. The motion received a second. Welch called for discussion and an unidentified alderman asked whether the original or amended ordinance was being considered. Welch responded:

> This is amended, but we are going to have to put this, I talked to our city attorney, we'll have to put this into a formal ordinance at the next council meeting, but I'm going to give them permission to go ahead and proceed, as the Liquor Commissioner, based on the Council's action tonight.

Welch then proceeded to a roll call, and all ten alderman voted in favor.

The council next met in December of 2007, but did not revisit Pro's liquor license. An ordinary Class A liquor license—with no mention of the restricted hours—was issued to Pro's. Bradley, one of the owners, obtained this license from the clerk, McIlvain, on January 4, 2008. However, a new "Class A-1" liquor license was "reissued" on January 8, 2008, signed by McIlvain and Welch. Like the original "Class A" license, the "Class A-1" license does not mention any time limitations on the service of alcohol. The municipal code does not have any provision describing a Class A-1 license.

At the preliminary injunction hearing, McIlvain testified that she was uncertain why she "reissued" the license to Pro's, but speculated that she did so in anticipation of an ordinance that would have created a Class A-1 license with the limited hours discussed at the November 2007 council meeting. No such ordinance was ever adopted. However, the owners of Pro's claim that a police officer subsequently showed them the first page of a draft ordinance that purports to establish such a classification. Pro's alleges that the police began enforcing these time limitations, resulting in several citations, arrests of management, and frequent visits by the police to Pro's at or shortly before the new closing time. Bradley testified that this resulted in lost business and revenues, identifying in particular the refund of fees to those who had booked private parties that were terminated early by police and lost bookings to other bars in the City that could remain open later.

In March of 2008, the city council entertained a motion to extend Pro's hours to those of a regular license holder. That ordinance did not pass, receiving five votes in support and five votes against.

Pro's applied for a new license prior to May 1, 2008, as all licensees were required to do. Pro's applied for a Class B license, apparently at the direction of Welch. When Pro's received its new Class B license, it stated the following limitation:

> This Liquor License is hereby Granted to Pro's Sports Bar & Grill to Sell/Dispense Liquor in the City of Country Club Hills, until 11:30 pm Sunday

through Thursday, and until 12:30 pm[3] Friday and Saturday . . . .

These new hours were not voted on by the city council, and are not the hours that were discussed at the November 26, 2007 meeting. At the preliminary injunction hearing, McIlvain testified that when she receives an application for liquor license renewal, she first confirms that the establishment's dram shop insurance is still valid and then issues a new one-year license with the same terms and conditions that the establishment's previous license had contained.

Pro's filed the instant litigation on October 21, 2008, seeking damages and an injunction under 42 U.S.C. § 1983. On October 31, 2008, Pro's moved for a preliminary injunction. After a preliminary injunction hearing on December 8 and 9, 2008, the district court concluded that Pro's was likely to prevail on its due process claim and issued the injunction. The City now appeals.

## II. Analysis

On appeal from the grant of a preliminary injunction, we review the district court's legal rulings de novo, its factual determinations for clear error, and its balancing of the factors for an abuse of discretion. *See United Airlines, Inc. v. United Airlines Pilot's Ass'n, Int'l*, 563 F.3d 257, 269 (7th Cir. 2009).

---

[3] All parties agree that "pm" is a typographical error, and that 12:30 a.m. was intended.

The Fourteenth Amendment prohibits states from depriving a person of "life, liberty, or property, without due process of law." This prohibition applies with equal force to municipalities. *See Home Tel. & Tel. Co. v. City of Los Angeles*, 227 U.S. 278 (1913). We take a two-step approach to procedural due process claims: first, we ask whether the plaintiff has been deprived of a protected liberty or property interest; if so, we ask whether the deprivation occurred without due process. *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir. 2003).

Once granted, an Illinois liquor license is a form of property within the meaning of the due process clause. *See Club Misty, Inc. v. Laski*, 208 F.3d 615, 618 (7th Cir. 2000) (citing *Reed v. Village of Shorewood*, 704 F.2d 943, 948-49 (7th Cir. 1983)). This interest extends to the license's annual renewal. *Id.* Like revocation during the term of a license, nonrenewal requires cause and a hearing. *Id.*; *see also* 235 ILCS 5/7-1 to 7-14 (detailing the revocation process). The City maintains, however, that from the beginning, Pro's license was for the limited hours suggested by Alderman Hutson, and thus no deprivation occurred when the license was renewed with limited hours. Pro's, on the other hand, maintains that it was granted an unrestricted liquor license and was later deprived of that license.

Determining the nature of Pro's original license is a matter of statutory interpretation and thus a question of law that we review de novo. *Tammi v. Porsche Cars N. Am., Inc.*, 536 F.3d 702, 709 (7th Cir. 2008). Under Illinois law, municipal ordinances are interpreted according to the

traditional rules of statutory construction. *Neri Bros. Const. v. Village of Evergreen Park*, 841 N.E.2d 148, 153 (Ill. App. Ct. 2005). Illinois directs courts to ascertain and give effect to the intent of the enacting body, the clearest indicator of which is the language of the ordinance itself. *Id.* at 153-54; *see also People v. Donoho*, 788 N.E.2d 707, 715 (Ill. 2003).

The original proposed ordinance would have granted Pro's a Class A liquor license without additional restrictions. The version signed by the mayor and clerk is identical. Under Illinois law "the official acts of municipal corporations must be recorded and the records are the only lawful evidence of the action to which they refer." *See Western Sand & Gravel Co. v. Town of Cornwall*, 119 N.E.2d 261, 264 (Ill. 1954); *see also* 65 ILCS 5/1-2-6 ("The contents of all municipal ordinances . . . may be proved by the certificate of the municipal clerk, under the seal of the corporation.") Here, the municipal record—the signed ordinance—does not contain any hours limitation.

The City advances two different but related arguments to contest the straightforward language of the ordinance. First, the City argues that the signed ordinance does not reflect the city council's action on November 26, 2007 because of a scrivener's error. Rather than adopt the proposed ordinance, the City maintains, the council adopted an amended ordinance with limited hours. In the alternative, the City suggests that we interpret the ordinance based on the intent of the council, which it argues was to impose an hours restriction on Pro's.

Because there was never a vote on Alderman Hutson's proposed amendment—indeed, the ordinance had not yet been introduced at the time the amendment was discussed—the City relies on Mayor Welch's comments before the roll call vote to establish that the council voted on the amended ordinance. However, Welch's comments were at best ambiguous, if not actually contradictory. He first stated, "This is amended," but went on to say, "We'll have to put this into a formal ordinance at the next council meeting." The City argues that the mayor meant only that the clerk would have to change the text of the ordinance so that its language reflected the time limitations, but that would not require action at the next council meeting. It is unclear how the amendment could take effect without a vote. Thus, it appears that the published ordinance accurately reflects the proceedings before the city council on November 26, 2007.

It is true that we have previously refused to hold a city to a scrivener's error in the published version of a municipal ordinance. *See Christ Universal Mission Church v. City of Chicago*, 362 F.3d 423, 428 (7th Cir. 2008). But there is no evidence of a clerical error here. The City has not argued that the text of the ordinance considered by the city council at the November 26, 2007 meeting differs from the text of the ordinance signed by the mayor and clerk. *Cf. Christ Universal*, 362 F.3d at 428. Nor does it contain an obvious typographical error, like writing "12:30 p.m." when it is clear from the context that "12:30 a.m." was intended. Rather, the City is arguing that the clerk should have added an hours restriction to the text of the ordinance before its publica-

tion. But the clerk did not have authority to make this change, as the council passed no amendment to the ordinance before adopting it.

We also decline the City's invitation to rewrite the ordinance so that it conforms to its characterization of the council's intent. If "the statutory language is clear and unambiguous, then there is no need to resort to other aids of construction." *Carter v. Tennant Co.*, 383 F.3d 673, 682 (7th Cir. 2004) (citing *In re D.L.*, 727 N.E.2d 990, 994 (Ill. 2000)). The plain language of the ordinance confers a Class A license on Pro's. A separate section of the municipal code defines the hours of operation for Class A license holders. Nothing in the text of the ordinance suggests that the council intended to amend that section or to exclude Pro's from its effects. Thus, Pro's has a protected property interest in a liquor license with the same hours as other license holders in the City of Country Club Hills.

Having established a property interest, Pro's must still show that it has been deprived of that property without due process of law. Pro's did not receive a pre-deprivation hearing or any of the other protections of the revocation process. *See* 235 ILCS 5/7-1 to 7-14. We have previously held that denying renewal to a liquor license holder without a hearing or other adjudication violates due process. *Club Misty, Inc.*, 208 F.3d at 622.

The City acknowledges that Pro's did not receive any sort of hearing when its hours were curtailed. Instead, relying on *Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003), and *New Burnham Prairie*

*Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1480 (7th Cir. 1990), the City argues that a state court action for mandamus would provide all the relief that the plaintiffs seek, precluding their procedural due process claim. These cases rest on the principle that when a state officer acts in a "random and unauthorized" way—by unpredictably departing from state law, for example— the state has no opportunity to provide a pre-deprivation hearing and may instead satisfy due process by providing an adequate post-deprivation remedy. *See Easter House v. Felder*, 910 F.2d 1387, 1402 (7th Cir. 1990) (en banc). But mandamus would be an incomplete remedy here. Pro's is asking for more than an injunction compelling the City to issue an unrestricted liquor license. *Cf. Schwartz*, 330 F.3d at 941 (holding that plaintiffs, who sought injunctive relief under 42 U.S.C. § 1983, could get same relief in a state court mandamus action). The owners of Pro's seek damages to compensate them for the period of time in which the restricted hours were enforced against them. They allege these damages were substantial, resulting in lost business in excess of $50,000. Because no state remedy exists to compensate plaintiffs for these damages, Pro's is not foreclosed from bringing a due process claim.

Finally, we find no abuse of discretion in the district court's balancing of the preliminary injunction factors. A preliminary injunction requires both a showing of irreparable injury and a likelihood of success on the merits. *Hoosier Energy Rural Elec. Co-op, Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009). The district court concluded that the harm to Pro's was irreparable because it was difficult to ascertain the specific amount

of revenue being lost, and because damages might come too late to adequately compensate the plaintiff's business. *See Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 632 (7th Cir. 2005) ("[I]t is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.' "); *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1018 (7th Cir. 1990) (holding that harm is irreparable where damages "would come too late to save the plaintiff's business"). The district court heard live testimony on Pro's financial situation and the difficulty of determining exactly how much revenue Pro's was losing to other bars who could remain open later. Nothing suggests that the district court's factual findings were erroneous. The City argues that allowing the preliminary injunction to stand harms the public interest in alcohol regulation. Whatever force the City's argument might otherwise have, the City cannot have an interest in enforcing an ordinance that it did not enact. Given the strong likelihood of success on the merits, the concrete and irreparable harm to Pro's outweighs any interest advanced by the City in continuing to enforce the hours limitation.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of a preliminary injunction.